The last case on our calendar is Hines v. State of Connecticut. Yeah, I see. Thank you. Thanks. Okay. Thank you. Mr. Hassan, did you want rebuttal? Yes, Your Honor, if I may, with your permission, just two minutes of rebuttal time. Okay, yes, you may. Go, continue. Good morning, Your Honor. May it please the Court. My client is also present here, Your Honor, from Connecticut. I want to start with the chronology of facts, Your Honor, and facts matter in this case. Ms. Hines, who has worked with the Department of Corrections for over seven years, back in 2013 gave a state exam and qualified to be a correctional treatment officer,  Now, once she took her position sometime in mid-summer of 2013, she was assigned, this is the probationary period that happens when a CTO goes through a training phase. So she's assigned to this gentleman by the name of Mr. Haraka. Now, almost immediately, when I say immediately, within a couple of days or weeks, the relationship is not very good. The working relationship is not good. He starts to demean her. It came to a point where he waves a book at her or his hand. The department transferred him, right? Correct, Your Honor. Sometime in September, it came to a head. There was a major incident, and they did transfer him out. But in the meantime, while Ms. Hines is working there, she starts to go through the procedural aspect that she wants to make complaints. She wants to talk to her supervisors. And there are two gentlemen out there, Lieutenant Martin Zegersuski and Mr. Pazinski. Now, they hear the complaints. They are not a direct supervisor because Mr. Haraka was her trainer. But out of the blue, now, they're supposed to do some evaluations. She starts getting bad evaluations. Now, she has to go through this probationary period, and she has to pass the probationary period, presuming that she does well, and she passes her evaluation. Then she will be a permanent CTO, the short form of correctional treatment officer. Now, there's a union also with the Department of Corrections. She gets a union representative and says, I want to file a grievance. The union says, okay, let's try to file a grievance. This was after Mr. Haraka was transferred, correct? That is correct, Your Honor. What was the nature of her grievance after he's transferred? She did not agree with the evaluations at all. Almost every month, month and a half, she was getting bad evaluations. From someone other than Mr. Haraka? Correct, Your Honor. These are the supervisors who get the information from Mr. Haraka. Is there any evidence that these negative evaluations were based on gender or race? Your Honor, the only evidence we have, she is the only African-American CTO training at that time frame. She also apparently forgot her password and spent some time trying to get her computer to work. That's not a race or gender-based complaint, correct? That is correct, Your Honor, but that is not true. That's why she had said in her affidavit and during this process that one day she comes in, she logs into her computer just like any other person, and the next day, the passcode, she cannot log in. She has to call . . . You said she was the only African-American CTO. Any other evidence that race or gender played a factor in any employment decision? I do not have direct evidence, Your Honor. Any evidence? Even circumstantial evidence? Your Honor, the other . . . She's the only one who goes through this process. She's the only one who is being, lack of a better word, targeted. There are no racist comments, no sexist comments, no statistics to show a disparity, anything like that that you see in these kinds of cases? No, Your Honor. I do not have a smoking gun, but the closest I can get for this incident during this process is sometime in October while she's working at the Department of Correction at the institute, at the prison, her car is vandalized. Big bold letters are written on the side of her car. Sorry to say this word, but it's spelled B-I-T-C-H. Now, did somebody do that to her car at her workplace because they didn't like her? Possibly. Of course it happened because somebody did not like her. Now, can I say, is there any evidence whether I can say or anybody can say whether it was for race or because she's a female or because she's complaining? No, I can't say that, but looking at the . . . The department says it did an investigation including looking at video and concluded that this did not happen, wasn't done by any employee. Is the video an evidence? Do you have a quarrel with that? Is there any evidence that it was done by a department employee? The only evidence is, Your Honor, that there's no video that was disclosed, but the only evidence is if I go walk outside right now and it's wet, I can say it rained. Let's presume she is working there, nothing happened in the morning, she parked her car, but somebody did that to her car. We can presume, common sense will presume that somebody did that at her workplace. We are not saying, I don't have evidence to show that a department employee who did not like her for gender or race did that to her. I can never show that, but can a jury decide that, hey, this was done to her car and somebody didn't like her, maybe just didn't like her because the way she is, maybe didn't like her because she's incompetent. Let's presume those facts for argument purposes. But at the same time, if she's going through this long-term phase of having a difficult time at the workplace, after seven years of working there and complaining about her supervisor, about her trainer, a jury could decide. That is a material fact I think could be disputed. A jury could decide, yes, she was a target for an improper purpose. Let's assume a jury could decide that an employee did this to her car. What about the overall picture? That would obviously be unfortunate. Is that enough to prove that she was discriminated against in the terms and conditions of her employment? No, Your Honor, no. What is there from which a jury could find that she was discriminated against in the terms and conditions of her employment based on race or gender? Because her good faith belief, number one. Number two, she, during the process . . . Her good faith belief enough? No, Your Honor, and to go on with it, there's an affirmative action unit. Connecticut DOC is a big agency obviously for the state of Connecticut. So they have these units at least who hear people's incidents or grievances. I don't think they can do anything about it because they're not controlling managers. But she goes and tells them about all these issues that have been happening during her probationary period as a CTO. And she says all these grievances that happened, the small incidents, but they all add up. I'm not saying that just a vandalism of the car. I'm talking about how Haraka treated her, how she was during when she has to cross or do inspections, she has to radio in for a door to open, the big steel or iron doors that have to be opened to go to the next location. She could not get those doors open. It's in her affidavit. The reason she couldn't do it is because she had to wait for some other employee to come and let her cross to the next location or next wing or next door or next place for inspection in that prison, in that institution. So that's what I have, Your Honor. I think my time is up. Counsel, I just want to say that the state of Connecticut put in an appendix because you failed to with the information that we would need to decide this case. They've now asked for reimbursement. Do you have . . . well, you have two minutes to rebuttal. You can tell us why we shouldn't grant their request when you return to the podium. Yes, Your Honor. Good morning, Your Honors. May it please the Court. Carolyn Ennis, Assistant Attorney General, representing the defendant, the State of Connecticut Department of Correction in this matter. This court should affirm the district court's granting of summary judgment for the defendant on the plaintiff's discrimination and retaliation claims brought under Title VII and the Connecticut Fair Employment Practices Act. I'll note for the court, because the plaintiff makes reference in her brief to harassment and a hostile work environment, that she withdrew any other claims before the district court. So the only claims at issue in this case are the discrimination and retaliation claims. The district court properly granted summary judgment on both those claims, finding that the plaintiff failed to present evidence that the defendant's legitimate reasons here, the well-established record as to her overall unsatisfactory performance in her promotional working test period, and her unauthorized leave following her failure to submit proper medical documentation to substantiate a continued absence. There was no evidence presented that these reasons were a pretext for any unlawful discrimination or retaliation. Indeed, the record indicates otherwise that DOC, other than acting with a discriminatory or retaliatory purpose, went above and beyond in this case, giving the plaintiff ample opportunity to succeed in her promotional working test period, offering to extend the period, implementing an action plan, and notified her on several different occasions of the need to submit a proper medical certificate. So because the district court properly found that the plaintiff failed to present any evidence of pretext as to these reasons, the district court's decision should be affirmed. Unless the court has any further questions that I can answer, I will speak on the preparation of the appendix. Do you have a motion for reimbursement? We do. We did have to provide an extensive, as Your Honor noted, supplemental appendix. I believe that motion has been reserved until after the panel's decision. But we would be seeking reimbursement at least to the extent of the bond imposed at the district court level. Thank you. Any questions? No, thank you. Thank you. Mr. Hasan, you have two minutes for rebuttal. Yes, Your Honor. Do you want to explain why the appendix was incomplete or nonexistent, I think it was? It was a very brief appendix, Your Honor. I think two issues, Your Honor. I relied on, I believe the record below, and maybe I read the Second Circuit rule, did I read it properly, that the party can rely on the record below to cite to the- You have to put it before us in some way. Correct. I think I did tell counsel, too, at some point there was an email exchange that, you know, it would be too expensive, well, too expensive for me and too expensive for my client, and if we can rely on that record itself. But there is a bond. Before the case was initiated, there was a bond in place, and they'd asked for it. That was in place. That's still in the district court, and if the court decides, then so be it.  Anything else? Can I take one more minute, Your Honor? I think I have 59 seconds. One more fact, Your Honor, that during her probationary period, a lot of policy and procedures at the DOC, during that period she cannot, a probationary period employee cannot file a grievance. It is not allowed, and that's why the union could not help her in that regard to go forward. What about the medical authorization? It does look like these two medical certificates are identical, except that the second one, the date was whited out. Correct, Your Honor. That is what they've said. Now, of course, my client, Ms. Hines, never, ever would even dream of doing or whiting it out. It's possible. We believe it is. Pull them up side by side.  Correct, Your Honor. We believe that it's possible that the doctor's office, because the doctor's office is the one also who had faxed over this information. The doctor's office did that? Most likely, Your Honor. That was pretty straightforward. I think I'm out of time again. Thank you both. We'll reserve decision. That concludes our argument calendar, so I'll ask the clerk to adjourn court. Court is adjourned.